**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Ricky R. Schuh, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| ) | |
| Burleigh Morton Detention Center, et al., ) | |
| ) | Case No. 1:20-cv-142 |
| Defendants. ) | |

Plaintiff Ricky R. Schuh ("Schuh") filed an amended complaint on January 26, 2022. Having reviewed his amended complaint pursuant to 28 U.S.C. § 1915A, I recommend that the court permit Schuh to proceed with a portion of his First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims and dismiss the remainder of his claims.

**I.   BACKGROUND**

Schuh initiated the above-captioned action pro se and in forma pauperis in August 2022 while in custody at the Burleigh Morton Detention Center ("BMDC"). (Doc. No. 3-3). He has since been transferred to and is presently residing at the North Dakota State Penitentiary ("NDSP"). (Doc. No. 17).

In his original complaint Schuh named BMDC and Sergeant Eric Howe as defendants. (Doc. No. 7). Professing to be a practitioner of the Jewish faith, he claimed that he had been denied kosher meals in violation of the First Amendment's Free Exercise Clause. (Id.). The court screened the complaint as required by § 1915A. Unprepared to conclude that it was completely devoid of any cognizable claims, the court issued an order directing the Clerk's office to effectuate service of summonses and Schuh's complaint on defendants in accordance with Fed. R. Civ. P. 4. (Doc. No.

1

12). The Clerk's office subsequently sent requests for waivers of service to defendants. (Doc. Nos. 13, 14, 15). It did not receives responses from defendants. Consequently, on June 23, 2021, the court issued an order directing the United States Marshals Service ("USMS") to effectuate service. (Doc. No. 18). On June 25, 2021, the Clerk's office reissued summonses, which it distributed to the USMS along with copies of the complaint and which the USMS in turn served on BMDC. (Doc. No. 21).

On July 14, 2021, Schuh filed a motion for leave to file an amended complaint. (Doc. No. 34). On July 16, 2021, he filed a supplement to his motion. (Doc. No. 37).

Meanwhile, on July 14, 2021, BMDC filed its answer to Schuh's original complaint. (Doc. No. 35). On July 27, 2021, it filed a response in opposition to Schuh's motion for leave to file an amended complaint. (Doc. No. 40).

On August 6, 2021, Schuh filed a reply in support of his motion to amend. (Doc. No. 45). On August 11, 2021, he filed a motion to strike BMDC's response to his motion to amend along with a motion to compel discovery. (Doc. Nos. 50, 51). In the months that followed he filed a motion for summary judgment, two additional motions to compel discovery, and a motion requesting the court to issue a scheduling order. (Doc. No. 56, 60, 61, 63).

On January 6, 2022, the court issued an order granting Schuh's motion for leave to file an amended complaint, deeming Schuh's motion to strike moot, denying the remainder of Schuh's motions without prejudice, explaining to Schuh that his amended complaint would supersede his prior pleadings, and informing Schuh the parties were not authorized to engage in discovery until after the court had screened his amended complaint, held a scheduling conference, and issued a scheduling order. (Doc. No. 69).

On January 26, 2022, Schuh filed an amended complaint. (Doc. No. 74). As defendants he named BMDC along with Sgt. Eric Howe; Chaplain Greg Carr; Sgt. Eva Burman; Lt. Jennifer Rewald, Officer Greg Olson, Officer Cameron Bott, and Officer Wyette Parisien in their individual and official capacities  He claims that some of these defendants violated his rights under First Amendment and RLUIPA by denying him kosher meals.  He further claims that some of these defendants retaliated against him for filing this action and otherwise denied him his right to equal protection under the law.  In his prayer for relief he requests an award of money damages as well as what the undersigned liberally construes as declaratory and injunctive relief. In so doing, he makes it clear that he is not seeking monetary damages from defendants in their individual capacities. (Id.).  His amended complaint supersedes his original complaint and is subject to initial review.

## II.   SCREENING REQUIREMENT AND STANDARD

When a prisoner proceeding in forma pauperis seeks to sue a governmental entity, officer, or employee, the Prison Litigation Reform Act of 1995 ("PLRA") requires the court to conduct an early screening of the complaint to weed out claims that clearly lack merit with the hope this will lessen the burdens imposed by the ever-rising numbers of prisoner suits, which too often are frivolous and without merit.  Jones v. Bock, 549 U.S. 199, 202-03 (2007); Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  In conducting the screening required by 28 U.S.C. § 1915A, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant.

The PLRA does not impose any heightened pleading requirements. Jones, 549 U.S. at 211-12.  Consequently, in order to state a cognizable claim, the complaint need only meet the minimum

requirements of Fed. R. Civ. P. 8(a)(2), which are that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).

The court is obligated to construe a *pro se* complaint liberally and hold it to a less stringent standard than what normally would be required of attorneys. Id.; see also Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008); Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015). This does not mean that the court must accept everything or anything that is filed by *pro se* prisoners, however. In enacting the screening requirement, Congress obviously expected it to be more than an a ritualistic exercise and that courts would only allow to go forward those claims that are cognizable, that seek relief from a non-immune party, and that are not obviously frivolous or malicious.

To meet the minimal pleading requirements of Rule 8(a)(2) for stating a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007) ("Bell Atlantic"). The complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. at 93 (quoting Bell Atlantic, 550 U.S. at 555). And, even though the complaint is to be liberally construed, it must also contain enough to satisfy Bell Atlantic's "plausibility standard." E.g., Ventura-Vera v. Dewitt, 417 F. App'x 591, 592, 2011 WL 2184269, *1 (8th Cir. 2011) (unpublished per curiam) (citing Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2007) for the appropriate post-Bell Atlantic standard); see also Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (*pro se* complaints must allege sufficient facts to state a claim). Complaints that offer nothing more than labels and conclusions or a formulaic recitation of the

4

elements are not sufficient. See id. Frivolous claims are those that are clearly baseless, fanciful, fantastic, or delusional. See Denton v. Hernandez, 504 U.S. 25, 32-34 (1992).

To state a cognizable claim, a plaintiff must normally allege a violation of a right secured by the Constitution or the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157 (8th Cir. 1997). Even under liberal pleading standards, a *pro se* litigant, at the very least, must invoke rights under the Constitution or federal law in order to plead a cognizable claim. Walker, 104 F.3d at 157-58.

Also, even though the court is obligated to construe *pro se* complaints liberally, the court is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim. The court may accept as true all facts pled in the complaint and conclude from them that there is no claim as a matter of law. E.g., Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753-54 (7th Cir. 2002) (citing other cases). Also, liberal construction does not mean the court is under an obligation to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

## III. DISCUSSION

### A. Defendant BMDC

Schuh names BMDC as a defendant. BMDC is not a suable entity, however. See Owens v. Scott Cty. Jail, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); De La Garza v. Kandiyohi Cty. Jail, 18 Fed. App'x 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Given that Schuh is proceeding pro se and construing his pleadings liberally, the court can conclude that it was Schuh's intent to sue the county as opposed to the jail and on its own

motion make this substitution.

### B.  Defendant Jennifer Ewald

Schuh's claim against Ewald should also be dismissed.  Ewald is named as a defendant in the case caption.  Her name later appears in the body of the amended complaint.  However, the amended complaint contains no allegation that she engaged in any actionable conduct or wrongdoing.  Rather, it simply states that she was party to an electronic communication with another defendant regarding Schuh.  Absent any specific allegation of wrongdoing, Ewald's alleged participation in a single conversation about Schuh does not constitute the basis for a cognizable claim against her.

### C.  Claims One and Three - Free Exercise of Religion

Schuh claims that Howe, Carr, and Olson violated his rights under the First Amendment and RLUIPA by initially denying his requests for kosher meals and by later forcing him to abandon or retract his requests for such meals.   Specifically, he alleges:

> Sgt. Eric Howe, Chaplain; Greg Carr, Lt; Jeff Olson all violated my 1st Amendment right to religious expression.  Known as R.L.U.I.P.A "Free exercise clase."  The above listed, all at some point with malice towards me denied me kosher meals and disreguarded every complaint I had.  As far as Jennifer Rewald, all that is known is that she had an electronic conversation with chaplain Greg Carr about why I cant convert and why BMDC need not honor my religious expression.  Further more, after fighting BMDC they finally gave me kosher However, forced Me to request to leave kosher for the following reasons (1) constantly forgetting to make my trey and at times flat out skipping me, (2) tampering with the amount served and in some cases not giving me things that I should have got and (3) forcing unfair commissary restrictions that surpass kosher requirements which leads to count 2 retaliation.  Malnourishment was the cause of the injury.  And severe anxiety, panic attacks.

(Doc. No 74) (errors in original). He further alleges that Bott, Parisien, and others took steps to ensure he could not continue to receive kosher meals.  In his prayer for relief, he makes it clear that he is only seeking to recover money damages from defendants in their official capacities and not in their individual capacities.

6

### 1. First Amendment

Prison inmates retain protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (recognizing that prisoners are limited by considerations unique to the demands of the penal system). In order to state a First Amendment claim, Schuh must allege facts tending to show that defendants substantially burdened the free exercise of his religion. See Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008). Substantially burdening one's free exercise of religion means that defendants "must significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual religious beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person's] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion." Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 988 (8th Cir. 2004) (internal quotation omitted).

Here, Schuh professes to be a practitioner of the Jewish faith and that he was actively and constructively denied kosher meals. It is not entirely clear at this point when he requested kosher meals or how long he was actually or constructively denied such meals. See e.g., Maynard v. Hale, 2012 WL 3401095, at *4 (M.D. Tenn. Aug. 14, 2012) (opining that a short-term or sporadic disruption of one's eating habits does not constitute a substantial burden on religion freedom). Nevertheless, the court can find that he has alleged sufficient facts to survive initial screening insofar as he seeking to recover monetary damages from Burleigh County and Howe, Carr, Olson, Bott, and Parisen in their official capacities. To the extent that he seeks injunctive and/or declaratory relief, his claim is essentially moot as it is clear from the record that he is no longer incarcerated at BMDC. See Gladson v. Iowa Dep't of Corr., 551 F.3d 825, 835 (8th Cir. 2009) (deeming prisoner's claims

for injunctive and declaratory judgment moot); Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999) (recognizing that a prisoner's transfer to a new facility may render that prisoner's claims for injunctive relief moot); see also Berryman v. Granholm, 343 F. App'x 1, 5 (6th Cir. 2009) (prisoner's claim for injunctive and declaratory relief mooted by his transfer to a new facility).

### 2. RLUIPA

RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A)). "[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation," and the prison policy must substantially burden the prisoner's exercise of religion. Holt v. Hobbs, 574 U.S. 352, 360-61 (2015).

To establish a prima facie case under RLUIPA, a plaintiff must show "1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened." Smith v. Allen, 502 F.3d 1255, 1276 (11th Cir. 2007) (abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277 (2011)); see also 42 U.S.C. § 2000cc-1(a). If a plaintiff succeeds in making a prima facie showing, defendants bears the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling governmental interest. Allen, 502 F.3d at 1276.

Here, the court can find that Schuh has made a sufficient threshold showing of a substantial burden on his religious exercise to survive initial review insofar as he is seeking to recover monetary damages from Burleigh County and Howe, Carr, and Olson in their official capacities. See Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010) (explaining that a suit against government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity). Schuh professes to be an adherent to or at least to have a sincere interest in converting to Judaism and has indicated that a kosher diet has religious significance to him. He

further asserts that the exercise of his faith has been substantially burdened in that he was actively and constructively denied kosher meals on multiple occasions despite notifying staff at BMDC of his religious dietary needs.

Schuh cannot maintain a RLUIPA claim against How, Carr, Olson, Bott and Parisen in their individual capacities, however. This is because RLUIPA "does not allow for claims against individuals." Monteer v. ABL Mgmt. Inc., No. 4:21-CV-756 ACL, 2021 WL 3570301, at *4 (E.D. Mo. Aug. 12, 2021), reconsideration denied, No. 4:21-CV-756 ACL, 2021 WL 3847137 (E.D. Mo. Aug. 27, 2021) (citing Blake v. Cooper, 2013 WL 523710, *1 (W.D. Mo. Feb. 12, 2013); Waff v. Reisch, 2010 WL 3730114, *11 (D.S.D. July 30, 2010), and Van Wyhe v. Reisch, 536 F.Supp.2d 1110, 1118 (D.S.D., aff'd in part, rev'd in part on other grounds, 581 F.3d 639 (8th Cir. 2009)); Sharp v. Johnson, 669 F.3d 144, 154 (3d Cir. 2012) ("RLUIPA does not permit an action against Defendants in their individual capacities."); Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014) (stating that RLUIPA "does not authorize suits against a person in anything other than an official or governmental capacity"); Gayson v. Schuler, 666 F.3d 450, 451 (7th Cir. 2012); Sossamon v. Lone Star State of Tex., 560 F.3d 316, 329 (5th Cir. 2009). "[A]an action under RLUIPA does not exist for individual-capacity claims.").

Further, insofar as Schuh is requesting declaratory and injunctive relief, his claim is moot by virtue of the fact that he is no longer incarcerated at BMDC. See Gladson v. Iowa Dep't of Corr., 551 F.3d 825, 835; Smith v. Hundley, 190 F.3d 852, 855; see also Berryman v. Granholm, 343 F. App'x 1, 5.

### D. Claim Two- Retaliation

Schuh next claims that defendants retaliated against him for requesting kosher meals and/or for initiating the above-captioned action. Specifically, he alleges:

9

The 8th Amendment "crule and unusual punishment" in regards to a "retalation claim." The following actions the Plaintiff wishes to question. Bringing me to the hole over then thinking I took a disposable spoon, Furthermore, that was not in the facilitys policy, and attempting to remove me off kosher even though no rule was broken. Tampering with my legal mail in my law-suit, tampering with my meals by constant inconsistentcy in what's served, the amount I get, and forgetting on a very frequent bases to make my food and at time the result was skipping my meal do the fact that the kitchen workers leave the building. And harassment with frivolous write ups like the spoon, taking away rec over false accusations like saying I took a razer, or people writing on walls then when I requested the report none was provided. There was no report because I never did nothing wrong. They treated me this way because of my law-suit and because I wanted to be on kosher and follow the dietary laws of GOD, and the commassary restrictions for no reason. This resulted in serious anxiety, anti-social disorder and PTSD.

* * *

Furthermore; while all this was hapening the B.M.D.C. was looking for anyway possible to remove me from kosher. Tampering with my food was not enough so the B.M.D.C. took me to the hole on a false write up. This falsehood can be proven by their own language in the report dated 4/02/2020, I quote "223; intentionally creating an unsafe condition; 230 disobey a verbal order from staff; concealing or attempting to conceal items for a staff member." Officer Bott states he retrieved my container in the trash, he then asked officer Parisien if the spoon was on the other treys, Parisien said no. Bott then approached cell C where im housed, Bott then advised me if he doesn't get it back then there will be another shakedown. I told Mr. Bott to do another shakedown, Bott then told me to place my hands behind my back, I complied, Officer Bott and Officer Parisien then state that there was no further incident.

The problem with this report goes follows; Am I not to throw my disposable trash in the trash? In paragraph 2 of the report claims their were 5-10 spoons found, I assume the officers involved are able to count to 10 there what was really found? At no point in time does the report claim to have found spoons on my person or in any of my rooms, in fact that day there was never a shake down in 230 when the time comes.

Furthermore; no where in the rule book at that time does it say that kosher disposible dixi spoons are considered contraband, in fact Lieutenant Jeff Olson sent a memorandum updating facility policy the day after on 4/03/2020, meaning that the officers knew no rules have been broke and yet still brought me to the hole for punishment. No camera footage seen me take a spoon, and at no point did I ver get a chance an infraction hearing to defendant myself. I never resisted or threatend officers. Another issue with the report is that officers claiming this disposible dixi sppon can be made into shank, any reasonable person who has seen a dixi sppon would understand this theroy is unlikely at best.

10

(Doc. No. 74) (errors in original).

First, Schuh's assertion that defendants took steps to deny him kosher meals in retaliation for requesting kosher meals or that the kosher meals he was eventually provided were wanting does not constitute the grounds for a claim separate and distinct from his First Amendment and RLUIPA claims. Second, Schuh's claim that defendants retaliated against him for filing this lawsuit is not cognizable in the present action. This claim "must be pursued by filing a separate § 1983 action after he has fully and properly exhausted his administrative remedies regarding any such retaliation." Owens v. Hobbs, No. 5:12CV00159 SWW/JTR, 2012 WL 2870815, at *2 (E.D. Ark. June 18, 2012), report and recommendation adopted, No. 5:12CV00159 SWW/JTR, 2012 WL 3111703 (E.D. Ark. July 31, 2012) (citing 42 U.S.C. § 1997(e); Johnson v. Jones, F.3d 624, 627 (8th cir. 2003); and Graves v. Norris, 218 F.3d 624, 627 (8th Cir. 2003)); see also Roberts v. Payne, No. 320CV00391KGBERE, 2022 WL 820934, at *1 (E.D. Ark. Mar. 17, 2022) (opining that claims of retaliatory conduct that occurred after he filed a lawsuit are separate and distinct claims that must be pursed in a new, separate § 1983 action). Accordingly, Schuh's retaliation claim should be dismissed without prejudice.

### E.  Claim Four - Equal Protection

Schuh's fourth claim reads in its entirely as follows: "malnourishment/severe loss of weight at that time. Documentation of this was submitted with the court. Please look to the docket sheet. Violation of equal protection apply to all." (Doc. No. 74) (errors in original).

When granting his motion for leave to file an amended complaint, the undersigned informed Schuh that, once filed, his amended complaint would be the operative pleading and supersede all of his previous submissions, and that the court "would not look back to his earlier pleadings but will only consider what is contained in his amended complaint." (Doc. No. 69). Consequently, Schuh

was given notice that the court would not be looking back through the docket when reviewing his amended complaint. In any event, it is not incumbent on the court to look through all of the documents Schuh has filed to date in an effort to divine what he trying to assert or to cobble together claims for him. See e.g., Sileoni v. IDOC Staff Health Providers, No. 1:21-CV-00023-BLW, 2021 WL 1759267, at *3 (D. Idaho May 4, 2021) ("Plaintiff must give fair notice to the Defendants of the alleged violations of which he complains They are not required to search through documents to try to ascertain Plaintiff's claims that are not clearly specified in the pleadings. Nor is the Court required to extrapolate plausible claims from exhibits in the screening process."); Kokinda v. Elkins Police Dep't, No. 3:21-CV-00154, 2022 WL 481257, at *2 (N.D.W. Va. Feb. 16, 2022) ("Federal judges are not pigs searching for truffles and federal courts are not required to be 'mind readers' or advocates for pro se litigants in construing pro se pleadings."). The court is required to liberally construe Shuch's pleadings. In so doing it cannot draft Schuh's claims. Rather, it must look at what Schuh has alleged in his amended complaint and determine whether, for pleading purposes, it constitutes a cognizable claim. Here, Schuh has clearly failed to assert a cognizable equal protection claim.

To succeed on an equal protection claim, an inmate must show that he is treated differently than a similarly situated class of inmates, that the different treatment burdens one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest. Murphy v. Missouri Dep't of Corr., 372 F.3d 979, 984 (8th Cir. 2004) (citing Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir.1998)). Here, Schuh simply blurts out "violation of equal protection to all." However, he does not allege that he was treated differently than similarly situated inmates. Consequently, his equal protection claim should be dismissed. See e.g, Sterling/Sayyed v. Banks, 72 F. App'x 504, 506 (8th Cir. 2003) (affirming pre-service dismissal of inmate's equal protection claim when inmate failed to allege he was treated differently than similarly situated inmates).

## IV.     CONCLUSION AND RECOMMENDATION

The undersigned **RECOMMENDS** that the court substitute Burleigh County in place of BMDC and permit Schuh to proceed with his First Amendment claim for damages against Burleigh County and against Howe, Carr, Olson, Bott, and Parisien solely in their official capacities. The undersigned further **RECOMMENDS** that the court allow Schuh to proceed with his RLUIPA claim for damages against Burleigh County and against Howe, Carr, Olson, Bott, and Parisien solely in their official capacities. Finally, the undersigned **RECOMMENDS** that the court dismiss the remainder of Schuh's claims.

## NOTICE OF RIGHT TO FILE OBJECTIONS

Any party may object to this recommendation. D.N.D. Civil L.R. 72.1(D)(3). Objections are due by May 13, 2022. A failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 21st day of April, 2022.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court